## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )     NO. 2:04-CR-80 |
| | ) |
| CHARLES TANNER, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on Charles' Tanner's Motion to Vacate Conviction and Sentence Pursuant to 28 United States Code Section 2255, filed on October 1, 2012. For the reasons set forth below, this motion is **DENIED**.  The Clerk is **ORDERED** to **DISMISS** the civil action **WITH PREJUDICE**.  Additionally, the Court **DECLINES** to issue a certificate of appealability.


BACKGROUND

On October 21, 2004, Defendant, Charles Tanner ("Tanner"), was one of fourteen defendants charged in a twenty-two count superseding indictment.  The superseding indictment alleged Tanner was a major player in a conspiracy to distribute large amounts of cocaine.  Ultimately, twelve of the fourteen defendants pled guilty.  Tanner and co-defendant Lance Foster proceeded to trial.

Trial commenced on October 30, 2006.  After six days of trial,

-1-

the jury convicted Tanner on Counts 2 and 3 of the superseding indictment and he was sentenced to life imprisonment.  Tanner appealed the verdict and sentence, which the Seventh Circuit Court of Appeals affirmed.  *United States v. Tanner*, 628 F.3d 890 (7th Cir. 2010).  The facts and procedural posture of this case are well documented in the Seventh Circuit's opinion, and need not be recounted here in full.

In the instant motion, Tanner asserts his conviction and sentence should be vacated because his trial counsel provided constitutionally ineffective assistance of counsel at both the pre-trial and trial stages.


DISCUSSION

Ineffective Assistance of Counsel

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations."  *Prewitt v. Untied States*, 83 F.3d 812, 816 (7th Cir. 1996).  In order to proceed on a habeas corpus petition pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.  *Id.*

"The Sixth Amendment entitles criminal defendants to the 'effective assistance of counsel'— that is, representation that

-2-

does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, No. 09-144, 2009 WL 3712013, at *2 (Nov. 9, 2009). The governing Supreme Court case is *Strickland v. Washington*, 466 U.S. 668 (1984).

To establish ineffective assistance of counsel under *Strickland*, the Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. The court's review of counsel's performance is "highly deferential," and the Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004). Under the prejudice prong, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Where it is expedient to do so, a court may resolve an ineffective assistance claim based solely on the prejudice prong; in other words, where a petitioner cannot establish prejudice, there is no need to consider in detail whether counsel's performance was constitutionally deficient. *See Strickland*, 466 U.S. at 697; *Watson v. Anglin*, 560 F.3d 687, 689-90 (7th Cir. 2009).

I.  Plea Bargaining Process

Tanner argues that his counsel was ineffective during the pre-trial plea bargaining process, citing that his attorney: (1) failed to review the discovery and inform Tanner that the Government had an audio tape of Tanner's conversations with Erbey Solis setting up the cocaine transaction which resulted in Tanner's arrest, and a videotape of the sham cocaine transaction; (2) failed to advise Tanner of any plea offer that had been extended; (3) urged Tanner to go to trial, claiming incorrectly that the Government had no substantive evidence to back up the claims of the Government's informants; and (4) failed to inform Tanner of consequences of proceeding to trial.

Unquestionably, ineffective assistance claims apply to the pre-trial plea bargaining process. *Missouri v. Frye*, 132 S.Ct. 1399 (2012). In *Frye*, the Supreme Court held that defense counsel has a duty to communicate formal offers from the prosecution and is considered deficient by failing to communicate written plea offers before they expire. *Id.* This set of principles exists to allow a court to "place the defendant in the position he would occupy had counsel been effective. That is, if counsel is determined to have been effective, equities require that the defendant be put in the same place he would have been but for counsel's ineffective assistance- i.e. he should be given the opportunity to accept the never-communicated plea offer." *United States v. Brown*, 623 F.3d

-4-

104, 114 (2d Cir. 2010)(citations omitted).

Here, however, there is no evidence in the record that there was ever a written plea agreement or that Government ever entered into plea negotiations with Tanner or Tanner's counsel. Tanner admits as much, by conceding that his trial counsel never informed him that the Government proposed a plea deal. (Tanner Aff. ¶ 5). Tanner attributes the fact that he can point to no plea offer that was made -and available for him to accept- to the ineffectiveness of his trial attorney. Tanner believes that "[e]ither [Attorney Volpe] did not communicate the government's willingness to negotiate to [] Tanner, or he did not communicate [] Tanner's willingness to negotiate to the government." (Reply, pp. 5-6). However, this is mere speculation at this point. There is no evidence to that effect. Tanner could have provided evidence from his trial counsel or an Assistant United States Attorney involved with the case as to whether or not plea discussions were held and whether those discussions were conveyed to Mr. Tanner. Nevertheless, Tanner failed to produce any evidence that plea discussions ever took place.

Because there is no evidence that the Government attempted to enter into plea negotiations with Tanner, Tanner's counsel cannot be deemed ineffective with regard to plea negotiations that never took place. *See e.g., Maddox v. United States*, No. 1:08-CR-90, 2013 WL 3878736 at *7 (N.D. W.Va. July 25, 2013)(concluding that

because there was no plea agreement offered to counsel, counsel could not be deemed ineffective for failing to communicate a plea agreement to defendant).

## II.  Counsel's Effectiveness at Trial

Tanner devotes much of the instant motion arguing that his trial counsel was ineffective in a number of ways during trial.

### A. Conflict of Interest

To start, Tanner argues his trial counsel was ineffective *per se* because counsel had an actual conflict of interest, initially representing both Tanner and his brother, Lamont Tanner. The problem with Tanner's argument is that Tanner never establishes there was an actual conflict, or that the dual representation affected the adequacy of representation.

Attorney Volpe did, indeed, initially represent both Tanner and his brother Lamont Tanner. In doing so, Attorney Volpe advised the Tanners of a possible conflict and obtained waivers from them. (DE## 73; 147, ¶ 7).  In addition, the parties requested, and Magistrate Judge Paul Cherry set, a Rule 44 Attorney Conflict Hearing.  (DE# 127; 147 ¶ 8).  However, before that hearing took place, Attorney Volpe withdrew as counsel for Lamont Tanner.  (DE# 159).  Notably, in withdrawing, Attorney Volpe insisted that he "has been careful to avoid learning an personal information from

Lamont Tanner that would be to Mr. Tanner's detriment. . . ." *Id.* at n.2.

Tanner provides a single legal citation - *Cuyler v. Sullivan*, 446 U.S. 335 (1980)- in support of his argument here.  In *Cuyler*, the Court noted that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348.  Tanner has failed to explain how there was an actual conflict or how that conflict affected Attorney Volpe's representation of Charles Tanner.  As such, this argument fails.

B. <u>Lack of Investigation</u>

Tanner next argues that his trial counsel provided ineffective assistance of counsel by failing to conduct an adequate investigation of the case regarding: (1) the content of the evidence actually in Attorney Volpe's possession; (2) witnesses to support Tanner's lack of predisposition to commit a drug offense so as to assist in presenting an entrapment defense; (3) witnesses who could provide relevant impeachment evidence against the government's cooperating witnesses; (4) witnesses who would have testified they were owners of the guns found in Charles Tanner's mother's home on New Year's Eve 1999, when Gary Police found a number of weapons, at least one of which was attributed to Tanner

by Warren Moore; and (5) a witness, Mona May, who would have testified that Tanner was with her on New Year's Eve, 1999, and that they did not go to Tanner's mother's home that night.

Regarding the first three complaints, the Government is correct that Tanner fails to provide sufficiently precise information to show what additional investigation would have produced. While Tanner argues his trial counsel should have investigated these matters more thoroughly, he fails to identify who many of these witnesses are or what precisely they would say.[1] At most, Tanner provides a list of witnesses he wanted counsel to call as witnesses at trial. (Tanner Aff. ¶ 11) But, again, Tanner fails to establish what any of these witnesses would say or what subject matter they would address. The Seventh Circuit has taught that, "[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced." *United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011)(citation omitted).

Thus, to succeed on this claim, Tanner must provide "the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003). Tanner must also

---

[1]Notably, Tanner relies on the prepared Affidavit of Attorney Visvaldis Kupsis to help establish that Attorney Volpe was unprepared. However, that Affidavit of Attorney Kupsis is unsigned and thus not helpful.

establish prejudice due to any lack of investigation. That is to say, Tanner must establish a "reasonable probability" that his counsel's failures affected the trial's outcome. *Bruce v. United States*, 256 F.3d 592, 599 (7th Cir. 2001). Because Tanner failed to meet his burden of providing the required specifics, his first three failure to investigate claims must fail.

The other two failure to investigate claims are centered around a 1999 New Year's Eve Party, where guns were found, one of which was linked to Tanner. The gun evidence, Tanner suggests, was used at trial to "date the beginning of his participation in his brothers' drug conspiracy" and "make the jury believe that Charles Tanner was a dangerous person." (Reply, p. 13). Tanner argues that if his trial counsel would have performed a thorough investigation, he could have presented witnesses at trial to testify that they owned the guns that were at the party and that Tanner was not at the party. This evidence, Tanner argues, would have countered the government's contention that Tanner was involved in a drug conspiracy beginning in late 1999 or early 2000.

However, Tanner's desired evidence is immaterial to the jury verdict. As the Seventh Circuit acknowledged, even without testimony about the 1999 New Year's Eve party, "the jury would still have learned that Tanner had possessed and used firearms" and that "Tanner had possessed firearms during the period when he dealt drugs." *Tanner*, 628 F.3d at 902. Thus, there is no demonstrated

prejudice and this claim is without merit.

    1. <u>Failure to Present Entrapment Defense</u>

Tanner also alleges that his trial counsel was ineffective for not investigating and presenting an entrapment defense. "A valid entrapment defense requires proof of two related elements: (1) government inducement of a crime, and (2) lack of predisposition on the part of the defendant to engage in criminal conduct." *United States v. King*, 75 F.3d 1217, 1223 (7th Cir. 1996)(citations omitted).

At trial, Tanner's counsel did not present any evidence regarding Tanner's lack of disposition to engage in criminal conduct. Tanner argues that this was in error because "[he] had no criminal history of involvement with drugs, did not use drugs, and had a successful boxing career to supply his financial needs." (DE# 909, p. 14). He requests a hearing to "present witnesses he has identified and elicit testimony from them that is consistent with the entrapment defense, his lack of participation in or responsibility for the 1999 New Year's Eve party from which guns were seized, and his lack of predisposition to deal drugs." (DE# 909, p. 15).

In Tanner's affidavit, he identified a list of 13 witnesses he wanted to call at trial. (Tanner Aff. ¶ 11). Again, though, Tanner's affidavit fails to indicate what testimony each of these

witnesses would provide.  This is not specific enough information to succeed on this claim.  *Lathrop*, 634 F.3d at 939; *United States v. Herrera-Rivera*, 25 F.3d 491, 497 (7th Cir. 1994).

Even assuming that any or all of the 13 identified witnesses would testify in a manner consistent with Tanner's memorandum[2], the entrapment defense would still have failed.  The facts that Tanner was a boxer since a young age and maintained a rigorous training schedule, fail to establish that Tanner was not predisposed to drug dealing.  To the contrary, Warren Moore provided extensive testimony regarding Tanner's drug dealing activity.  And Tanner, himself, made statements to Special Agent Allen where he identified several individuals who provided him with cocaine and described several of his prior drug deals.  Simply put, the evidence at trial overwhelmingly established that Tanner was predisposed to dealing drugs.  The additional evidence Tanner wants to introduce (which, again, was not specified in the affidavits) would not change that.

### 2. Counsel's Preparedness for Trial

Tanner next argues that his counsel was constitutionally ineffective because he was unprepared for trial and failed to investigate many aspects of the case.  As explained earlier, to succeed on this type of claim Tanner must provide a detailed

---

[2] While Tanner's current counsel argues these witnesses would testify regarding Tanner's lack of predisposition, Tanner's affidavit is silent as to what testimony these witnesses would provide.

showing as to what the desired investigation would have produced, *Hardamon*, 319 F.3d at 951, and then establish a "reasonable probability" that his counsel's failures affected the trial's outcome. *Bruce,* 256 F.3d at 599.

Tanner complains that trial counsel failed to file pre-trial motions, failed to be prepared to cross examine witnesses, failed to file a motion to exclude firearms evidence, failed to object to witness Warren Moore conferring with his lawyer at a break, failed to object during Gary Police officers' testimony about 1999 New Year's Eve party, failed to cross examine Warren Moore regarding the murder of his girlfriend, failed to submit an entrapment jury instruction, failed to object to the given "ostrich" instruction, and failed to request a *Sears* instruction.  Not only does Tanner complain of each of these points in isolation, but he further argues that the cumulative effect of trial counsel's errors is tantamount to ineffective assistance of counsel.


### 3. Failure to file pre-trial motions

Tanner complains that his trial counsel failed to file his own challenge to the Government's *Santiago* proffer, failed to file any motions in limine, and failed to timely complete objections.  It is true that trial counsel did not always make his own objections.  However, as Tanner acknowledges, "the Court made it clear that an objection made by one counsel was adopted by the other, unless the

other opted out . . . ." (DE# 895, p. 19). Thus, any objection made by co-defendant Foster was also deemed made by Tanner. And, co-defendant Foster did file objections to the Government's *Santiago* Proffer.

Counsel's failure to file certain pre-trial motions in itself cannot establish ineffective assistance. Instead, Tanner must show that counsel's failures were unreasonable and prejudicial. Although Tanner complains that his counsel did not file certain pre-trial motions, Tanner has failed to specify what motions his counsel should have filed, explained how any of those motions would have been successful, or shown that the verdict would have been altered. As such, Tanner has failed to show that his counsel's failure to file pre-trial motions caused him any prejudice.

### 4. Failure to prepare to cross-examine witnesses

On the first day of trial, Tanner's co-defendant, Lance Foster, filed a motion in limine directed at the Government's firearms evidence. To avoid delaying the trial and to also allow the Court time to properly consider the motion, the Court inquired about available witnesses. The Government offered to change the order of witnesses. Tanner's trial counsel responded that he had relied upon the Government's intended order of witnesses and was not prepared to cross-examine the newly ordered witnesses.

While Tanner asserts this is a basis for an ineffective

assistance of counsel claim, Tanner fails to mention that the Court ended up ruling on Foster's motion in limine prior to the commencement of testimony and the Government reinstated its original order of witnesses.  Thus, there was no change in the order of witnesses and no resulting prejudice to Tanner.  Thus, this claim is without merit.

     5. <u>Failure to file motion to exclude firearms evidence</u>

Tanner complains that his attorney did not file a motion to exclude the firearms testimony relating to the 1999 New Year's Eve Party.  However, that motion was filed by Lance Foster's attorney, and was deemed joined by Tanner.  Nevertheless, that motion was denied by this Court at trial and this Court allowed that evidence to be admitted.  On appeal, though, the Seventh Circuit found the testimony should have been found inadmissible, but ruled that its admission was harmless.

Tanner has failed to articulate what prejudice he suffered based on his trial attorney's failure to file a motion to exclude firearms evidence.  Nor can this Court see any, especially considering co-defendant Foster filed an unsuccessful motion to exclude the firearms evidence and because the Seventh Circuit found the admission of any such evidence to be harmless.  For both of these reasons, this argument fails.

6. <u>Failure to object to witness conferring with counsel</u>

During a break in the direct examination of Warren Moore, Tanner's trial counsel observed Warren Moore conferring with his lawyer. Tanner's counsel did not object or bring it to the Court's attention until later in the day.

When Tanner's counsel brought this issue to the Court's attention, the Court gave Tanner's counsel an opportunity to find legal authority to prohibit Moore from conferring with his attorney during his testimony. Although Tanner's counsel did not find any applicable law, the Court did. The Court found and applied *Perry v. Leeke*, 488 U.S. 272, 282 (1989) and prohibited Moore from conferring with his attorney during his testimony.

Tanner now complains that his trial counsel's inability to find the *Perry* decision "reveals a stunning lack of preparation." (DE# 895, p. 25). However, in light of this Court's actions of finding and applying *Perry*, Tanner fails to explain how his counsel's actions caused him any prejudice.

7. <u>Cross-examination about interview of Tanner</u>

Tanner argues that his trial counsel was ineffective regarding his cross-examination of Special Agent Allen. During cross-examination, Tanner's trial counsel attempted to elicit testimony from the agent that the agent had an authorized meeting with Tanner; that is, the meeting was not authorized by the assistant

United States Attorney.  At the time, this Court told Tanner's trial counsel that getting into the subject of an unauthorized meeting on cross examination of Agent Allen should have been raised by way of pre-trial motion, rather than in cross examination.

What Tanner fails to mention, however, is that after a sidebar conference, the Court ruled that Tanner's counsel could go into that area on cross-examination.  Trial counsel did conduct cross-examination on the subject and, as such, Tanner can demonstrate no prejudice.

### 8. Failure to object to Gary Police Officers' testimony

Tanner complains that his trial counsel did not object to any of the Gary Police officers' testimony regarding the 1999 New Years' Eve party that was subsequently deemed by the Seventh Circuit to have been erroneously admitted at trial.  *Tanner*, 628 F.3d at 901.  However, the Seventh Circuit went on to explain that the admission of this evidence was harmless.  *Id.* at 902-03.  As such, there can be no prejudice established.

### 9. Failure to fully cross-examine Warren Moore

Tanner's next complaint centers around his trial counsel's failure to cross-examine Warren Moore about specifics regarding the murder and investigation of Moore's former girlfriend.

After the close of the first day of trial, the Court held a

-16-

brief voir dire of Government witness Warren Moore to determine whether he had been promised any benefit with respect to the investigation into the murder of his child's mother. Specifically, the Court stated, "[y]ou want to find out whether or not there was any kind of benefits that were given along that line. So that's the area that I want to confine it to." (Tr. Vol. I, p. 309). During the voir dire, trial counsel did not get into the specifics of Moore's actions on the night of his former girlfriend's murder. However, he was not allowed to either during the voir dire or on cross examination. (DE# 404). Thus, trial counsel did not get into topics that this Court told him not to get into. As such, there can be no ineffective claim.


### 10. <u>Failure to submit entrapment jury instruction</u>

Tanner makes much of his trial counsel's failure to submit an entrapment instruction. "Entrapment occurs when the government induces a person to commit an offense and h lacked the predisposition to do so without the inducement." *United States v. Bey*, __ F.3d __, 2013 WL 3455695 at *1 (7th Cir. July 9, 2013)(citations omitted). Thus, to present an entrapment instruction to a jury, a defendant must be able to proffer sufficient evidence of both inducement and lack of predisposition. *United States v. Plowman*, 700 F.3d 1052 (7th Cir. 2012).

As already explained, the evidence failed to show a lack of

predisposition on the part of Tanner.   Thus, even if his trial counsel would have submitted an entrapment instruction, it would have been rejected and not presented to the jury.   Therefore, there was no resulting prejudice from trial counsel's failure to submit an entrapment instruction.

11.  <u>Failure to object to "ostrich" instruction</u>

Tanner submits that his trial counsel erred in failing to object to the giving of an "ostrich" jury instruction.   This Court gave that instruction to the jury, which the Seventh Circuit determined was given in error.  *Tanner*, 628 F.3d at 905.   However, what Tanner fails to acknowledge is that the Seventh Circuit held that, "even though the ostrich instruction was given in error, Tanner cannot establish that he was harmed by that error."  *Id.* This is because, "[t]here is no reason to believe that the jury convicted Tanner on evidence showing only an innocent or negligent receipt of illegal drugs."  *Id.*   Accordingly, there can be no resulting prejudice from counsel's failure to object to the ostrich instruction.

12.  <u>Failure to request *Sears* instruction</u>

Lastly, Tanner argues that his trial counsel was ineffective for failing to request a *Sears* instruction.   A *Sears* instruction "informs the jury that a defendant's agreement with a government

-18-

agent cannot support a charge of criminal conspiracy." *Id.* at 906. The Seventh Circuit found that since Solis and Moore were both named as co-conspirators and since both, for a limited time, worked as Government cooperators, it was theoretically "possible for the jury to convict Tanner erroneously for conspiring with either Moore or Solis while they were government informants." *Id.* However, based on the evidence that Tanner conspired with Moore and Solis for extended periods of time, the Seventh Circuit found that there was only a "remote possibility" that this instruction would have altered the outcome of the case. A remote possibility is not a "reasonable probability," which is required to establish prejudice under *Strickland*. As such, this Court finds habeas relief is not warranted based on trial counsel's failure to request the *Sears* instruction.

III. <u>Cumulative effect</u>

Although this Court has determined that each of Tanner's individual claims against his trial counsel is insufficient to establish ineffective assistance of counsel, Tanner argues that the cumulative effect of his trial counsel's errors meets the *Strickland* standard for ineffective assistance of counsel. Indeed, it is possible for a court to find that the cumulative effect of trial counsel's individual acts was substantial enough to establish ineffective assistance of counsel. *Williams v. Washington*, 59 F.3d

673, 682 (7th Cir. 1995).

The problem here is that Tanner does not explain how the cumulative effect of trial counsel's complained of acts so infected the jury's deliberation that they denied Tanner a fundamentally fair trial. This is problematic because, in this Court's view, the effect of trial counsel's perceived shortcomings were not so substantial as to create a reasonable probability that the outcome would have been different. As the Seventh Circuit noted, and this Court reaffirms, the evidence against Tanner was overwhelming that he was a member of a drug conspiracy and intended to obtain a large amount of cocaine from Solis the night he was arrested. There is no reasonable probability that changing any or all of trial counsel's perceived shortcomings would have altered the jury's verdict.

Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should

have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (U.S. 2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Tanner has not stated any grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued.


<u>CONCLUSION</u>

For the reasons set forth above, this motion is **DENIED**. The Clerk is **ORDERED** to **DISMISS** the civil action **WITH PREJUDICE**. Additionally, the Court **DECLINES** to issue a certificate of appealability.



DATED:  October 11, 2013              /s/RUDY LOZANO, Judge
                                      **United States District Court**